**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

REBECCA HARPER, et al.,

        Plaintiffs,

   v.

REPRESENTATIVE DAVID R. LEWIS,
in his official capacity as Senior Chairman of
the House Select Committee on Redistricting,
et al.,

        Defendants.

Civil Action No. 5:19-CV-00452-FL

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR FEES AND COSTS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    A.    *Common Cause v. Lewis*: This Court Promptly Remanded a Prior State
        Constitutional Partisan Gerrymandering Lawsuit to State Court ........................... 2

    B.    *Harper v. Lewis*: Legislative Defendants Again Frivolously Removed this
        State Constitutional Partisan Gerrymandering Lawsuit to Federal Court ............. 4

ARGUMENT ........................................................................................................... 6

I.    Plaintiffs Are Entitled to Attorneys' Fees and Costs Under 12 U.S.C. § 1447(c) .............. 7

    A.    There Was No Objectively Reasonable Basis for Removal .................................. 7

        1.    The Removal Was Objectively Unreasonable in Light of *Rucho* .............. 7

        2.    Legislative Defendants' Argument That Federal Jurisdiction Exists
            Under the "Refusal Clause" Was Objectively Unreasonable .................... 9

        3.    Blackletter Principles of State Sovereign Immunity Preclude Federal
            Jurisdiction Over State-Law Claim Seeking to Enjoin State Officials ..... 10

    B.    The Removal Was Pursued in Bad Faith ........................................................... 11

    C.    Accounting of Fees and Costs .......................................................................... 12

        1.    The Attorneys' Fees Requested Are Reasonable Given the Time and
            Labor Involved, the Difficulty of the Questions Raised, and the
            Unique Time Limitations Imposed by the Circumstances ........................ 14

        2.    The Emergency Motion to Remand Required Efforts by Skilled and
            Experienced Counsel Who Were Forced to Drop Other Matters to
            Respond to Legislative Defendants' Unreasonable Removal .................. 15

        3.    The Results Obtained Support an Award of Attorneys' Fees in the
            Amount Requested ............................................................................... 17

        4.    The Attorneys' Fees Requested Are Similar to the Customary Fee for
            Like Work and to Attorneys' Fee Awards in Similar Cases ..................... 17

II.    Sanctions Are Warranted Under Rule 11 and this Court's Inherent Authority ................ 18

CONCLUSION ...................................................................................................... 21

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Perez*,
138 S. Ct. 2305 (2018) ................................................................................................10

*Adolph Coors Co. v. Truck Ins. Exchange*,
383 F. Supp. 2d 93 (D.D.C. 2005) ...............................................................................14

*Baines v. City of Danville, Va.*,
357 F.2d 756 (4th Cir. 1966), *aff'd*, 384 U.S. 890 (1966) .............................................3

*Barber v. Kimbrell's, Inc.*,
577 F.2d 216 (4th Cir. 1978) .......................................................................................13

*Barlow v. Colgate Palmolive Co.*,
772 F.3d 1001 (4th Cir. 2014) (en banc) .....................................................................18

*Brown v. Brown*,
977 F.2d 571, 1992 WL 266856 (4th Cir. 1992) ..........................................................18

*Chambers v. NASCO*,
501 U.S. 32 (1991) ......................................................................................................19

*Chosin Few, Inc. v. Scott*,
209 F. Supp. 2d 593 (W.D.N.C. 2002) .........................................................................19

*Common Cause v. Lewis*,
358 F. Supp. 3d 505 (E.D.N.C. 2019) .................................................................. *passim*

*Common Cause v. Lewis*,
No. 18-CVS-014001, 2019 WL 4569584 (N.C. Super. Ct. Sept. 3, 2019)................3, 4

*Common Cause v. Lewis*,
No. 5:18-CV-589-FL, ECF No. 1 (E.D.N.C. Dec. 14, 2018) ........................................3

*Cooper v. Harris*,
137 S. Ct. 1455 (2017) .............................................................................................2, 10

*Cranberry Fin., LLC v. Ctr. of Love Mission Church*,
No. 5:10-cv-524-FL, 2011 WL 666261 (E.D.N.C. Feb. 14, 2011) ..............................13

*Curran v. Price*,
150 F.R.D. 85 (D. Md. 1993)...................................................................................19, 20

iii

*Davis v. Pizza Hut of New Bern, Inc.*,
    No. 4:05-CV-167-FL(2), 2006 WL 8438587 (E.D.N.C. Apr. 6, 2006)....................................6

*Dodeka, LLC v. AmrolDavis*,
    No. 7:10-cv-17-D, 2010 WL 3239117 (E.D.N.C. Aug. 16, 2010) ....................................13, 17

*Doe v. Kidd*,
    656 F. App'x 643 (4th Cir. 2016) (unpublished disposition) ..................................17

*Garbie v. DaimlerChrysler Corp.*,
    211 F.3d 407 (7th Cir. 2000) ..............................................................11

*Grissom v. The Mills Corp.*,
    549 F.3d 313 (4th Cir. 2008) ..........................................................12, 13

*Hymes v. Harnett Cty. Bd. of Ed.*,
    664 F.2d 410 (4th Cir. 1981) ...............................................................7

*In re A.H. Robins, Co., Inc.*,
    86 F.3d 364 (4th Cir. 1996) ..............................................................13

*In re Crescent City Estates, LLC*,
    588 F.3d 822 (4th Cir. 2009) ........................................................18, 20

*In re Foreclosure Deed of Trust Dated Feb. 8, 1999*,
    No. 1:03-cv-00527, 2008 WL 5234301 (M.D.N.C. July 14, 2003)....................................12

*In re Kunstler*,
    914 F.2d 505 (4th Cir. 1990) ..............................................................19

*In re Lowe*,
    102 F.3d 731 (4th Cir. 1996) ...........................................................7, 11

*In re Sargent*,
    136 F.3d 349 (4th Cir. 1998) ..............................................................19

*Int'l Legware Grp., Inc. v. Americal Corp.*,
    No. 5:10-CV-153-D, 2010 WL 3603784 (E.D.N.C. Sept. 8, 2010) ........................................6

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ..............................................................13

*LaFountain v. Paul Benton Motors of N.C., LLC*,
    7:09-cv-212-F, 2010 WL 4457057 (E.D.N.C. Nov. 5, 2010)................................................13

*League of Women Voters of Pa. v. Commonwealth of Pennsylvania*,
    921 F.3d 378 (3d Cir. 2019)..........................................................13, 16

iv

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005).................................................................6, 12, 16

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013) ........................................................17

*McPhatter v. Sweitzer*,
401 F. Supp. 2d 468 (M.D.N.C. 2005) ........................................12

*Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*,
971 F.2d 917 (2d Cir. 1992).......................................................11

*Nies v. Town of Emerald Isle*,
No. 4:12-CV-10-F, 2013 WL 12159366 (E.D.N.C. Mar. 27, 2013) ........................................6

*Pennhurst State School & Hospital v. Halderman*,
465 U.S. 89 (1984).....................................................................11

*Plyler v. Evatt*,
902 F.2d 273 (4th Cir. 1990) .................................................12, 17

*Rucho v. Common Cause*,
139 S. Ct. 2484 (2019)........................................................ *passim*

*Rum Creek Coal Sales, Inc. v. Caperton*,
31 F.3d 169 (4th Cir. 1994) .................................................12, 15

*Sanders v. Farina*,
197 F. Supp. 3d 892 (E.D. Va. 2016), *aff'd*, 2016 WL 7338495 (4th Cir. Dec.
19, 2016) ...................................................................................20

*Spell v. McDaniel*,
824 F.2d 1380 ...........................................................................13

*Stephenson v. Bartlett*,
180 F.2d 779 (E.D.N.C. 2001) ....................................................9

*Veasey v. Wilkins*,
158 F. Supp. 3d 466 (E.D.N.C. 2016)..........................................17

*Wilson v. Ethicon Women's Health & Urology*,
2014 WL 1900852 (S.D. W. Va. May 13, 2014)...........................20

*Young v. Kenley*,
641 F.2d 192 (4th Cir. 1981) .......................................................7

## STATUTES

28 U.S.C. § 1443(2) ............................................................ *passim*

28 U.S.C. § 1447(c) ............................................................................................ *passim*

28 U.S.C. § 1927 ............................................................................................... 18

42 U.S.C. § 1983 ............................................................................................... 17

N.C. Gen. Stat. § 1-72.2 ..................................................................................... 11

## OTHER AUTHORITIES

11/5/19 Video at 4:17:00, https://www.ncleg.gov/Video/Redistricting2019 ................................ 2

Fed. R. Civ. P. 11(b) ......................................................................................... 18

Fed. R. Civ. P. 11(c)(1) & (2) ............................................................................. 18

Fed. R. Civ. P. 11(c)(2) ...................................................................................... 18

## INTRODUCTION

If ever there were a case where fees and costs were warranted for an improper removal, it is this case. Two business days after the state court granted Plaintiffs' motion to expedite and scheduled a hearing on Plaintiffs' motion for a preliminary injunction, Legislative Defendants removed this case to federal court. The removal was an egregious and transparent attempt to delay and derail the expedited state court proceedings. And it was objectively frivolous. Just months ago, in a case involving the very congressional districts challenged in this case, the U.S. Supreme Court squarely held that federal courts lack subject matter jurisdiction to hear partisan gerrymandering claims. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506-07 (2019). Legislative Defendants of course knew this, as they were the ones who procured the U.S. Supreme Court ruling, yet they removed this case on the supposition that federal courts have subject matter jurisdiction to hear partisan gerrymandering claims. Legislative Defendants could not possibly have believed that their removal would stick in light of their victory in *Rucho*.

The removal was objectively unreasonable even independent of *Rucho*. Less than a year ago, this Court rejected Legislative Defendants' materially identical removal of a state law partisan gerrymandering lawsuit challenging North Carolina's state legislative districts. *See Common Cause v. Lewis*, 358 F. Supp. 3d 505 (E.D.N.C. 2019). In *Common Cause*, as in this case, Legislative Defendants relied on the "Refusal Clause" of 28 U.S.C. § 1443(2). But as this Court held in both cases, the Refusal Clause does not apply "to attempted removals by legislators in actions challenging legislative districting," and it is "uncertain and speculative" that curing an unconstitutional partisan gerrymander requires a violation of federal equal rights law. Order at 7-8. In fact, Legislative Defendants' removal in this case was even more patently meritless than the one in *Common Cause*, because the U.S. Supreme Court has held that Legislative Defendants

lack any evidence that the Voting Rights Act (VRA) imposes requirements on the very congressional district on which Legislative Defendants based their removal here.  *See Cooper v. Harris*, 137 S. Ct. 1455, 1470 (2017).  Legislative Defendants themselves asserted that the VRA did not apply when they drew that district in 2016.  And just weeks after removing this case on the basis of a supposed VRA conflict, Legislative Defendants adopted criteria for drawing a remedial plan that barred any use of racial data and made no mention of the VRA.  Defendant Representative David Lewis was asked on the first day of hearings why the official criteria did not include a "VRA requirement," and he responded that "to [his] knowledge nobody has undertaken any study or has provided any data to the General Assembly … to say that race should be used."  11/5/19 Video at 4:17:00, https://www.ncleg.gov/Video/Redistricting2019.

Because "federal jurisdiction [was] doubtful for multiple reasons," remand was "necessary."  Order at 9.  Indeed, remand was not a close call.

The Court should not countenance Legislative Defendants' objectively unreasonable and bad faith removal.  For the reasons set forth below, the Court should award fees and costs to Plaintiffs in the amount of $36,404.30 under 28 U.S.C. § 1447(c).  Additionally, sanctions would be appropriate under Federal Rule of Civil Procedure 11 and the Court's inherent authority.

## BACKGROUND

### A. *Common Cause v. Lewis*: This Court Promptly Remanded a Prior State Constitutional Partisan Gerrymandering Lawsuit to State Court

In November 2018, numerous North Carolina voters—including 11 of the 14 plaintiffs in this case—filed an action in Wake County Superior Court against the same defendants named in this case, asserting that North Carolina's 2017 state House and Senate districting plans violated

the North Carolina Constitution.[1]  *See Common Cause v. Lewis*, No. 18-CVS-014001, 2019 WL 4569584 (N.C. Super. Ct. Sept. 3, 2019).  Plaintiffs did not assert any federal claims.  The plaintiffs moved to expedite the case.

On December 14, 2018, two days after the state court indicated it would soon act on the motion to expedite, Legislative Defendants removed the case under the Refusal Clause of 28 U.S.C. § 1443(2).  *See Common Cause*, 358 F. Supp. 3d at 508-13.  As in the instant case, Legislative Defendants asserted that the plaintiffs' state constitutional partisan gerrymandering claims created a "colorable conflict" with the federal Voting Rights Act and the Fourteenth and Fifteenth Amendments, supposedly because affording the requested relief would intentionally dismantle "minority crossover" districts.  Notice of Removal at 5-7, *Common Cause v. Lewis*, No. 5:18-CV-589-FL, ECF No. 1 (E.D.N.C. Dec. 14, 2018).  One business day after the removal, Plaintiffs filed an emergency motion seeking to remand the case to state court.  *Id.*, ECF No. 5.

After expedited briefing, this Court remanded, holding that § 1443(2)'s Refusal Clause did not authorize removal for three reasons.  First, "plaintiffs' state court action [was] not brought against the Legislative Defendants for 'refusing to do' anything."  *Common Cause*, 358 F. Supp. 3d at 510.  Second, "the 'refusal clause' … was intended to apply to 'state officers who refused <u>to enforce</u>' state laws," and Legislative Defendants "have only a legislative role, rather than a law enforcement role."  *Id.* (quoting *Baines v. City of Danville, Va.*, 357 F.2d 756, 759 (4th Cir. 1966), *aff'd*, 384 U.S. 890 (1966)) (emphasis by Court).  Third, any suggestion that "plaintiffs' attempt to enforce the provisions of the North Carolina constitution would run afoul of federal voting law" was "speculative."  *Id.*

---

[1] Legislative Defendants in *Common Cause* were the Speaker of the North Carolina House of Representatives, the President Pro Tempore of the Senate, the Senior Chair of the House Standing Committee on Redistricting, and the Chair of the Senate Standing Committee on Redistricting, all sued in their official capacity.  Legislative Defendants here are the same except that the two new co-chairs of the Senate committee have been added.

3

On remand, the three-judge state court panel held a two-week trial and unanimously entered judgment for the plaintiffs, holding that the 2017 state legislative plans violated the North Carolina Constitution and ordering the creation of new, fair maps for the 2020 elections. *Common Cause*, 2019 WL 4569584, at *2. None of the defendants appealed.

Notably, Legislative Defendants put on no VRA defense in the state-court proceedings, and the state court found that the plaintiffs' state constitutional claims did not conflict with the VRA or any other federal law. As the state court explained, "Legislative Defendants introduced no evidence at trial to establish that any of the three *Gingles* factors … is present," as would be necessary to establish a VRA defense. *Common Cause*, 2019 WL 4569584, at *131.

Next, despite having claimed in their removal-related submissions to this Court that they were "refusing" to comply with a state-law prohibition on partisan gerrymandering because such compliance would violate federal law, Legislative Defendants enacted remedial state legislative plans that they contend both (1) comply with the state-law prohibition against partisan gerrymandering and (2) do not violate federal law. Legislative Defendants advised the state court on September 23 they had no evidence "on whether the Voting Rights Act prerequisites could be satisfied" in North Carolina, *i.e.*, no evidence that the Voting Rights Act applied. *See* ECF No. 18-1 at 26 (Leg. Defs. Mem. re: House and Senate Remedial Maps).

B.    *Harper v. Lewis*: Legislative Defendants Again Frivolously Removed this
      State Constitutional Partisan Gerrymandering Lawsuit to Federal Court

Plaintiffs in this case are fourteen individual voters from each of North Carolina's congressional districts. They filed this action in Wake County Superior Court on September 27, 2019, asserting that North Carolina's 2016 congressional plan violates the same provisions of the North Carolina Constitution that the state court recently relied upon in *Common Cause v. Lewis* in striking down the state legislative plans. ECF No. 5-1 at 36-43 (Verified Complaint). As in

4

*Common Cause*, Plaintiffs do not assert any federal claims. One business day after filing the Verified Complaint, Plaintiffs moved for a preliminary injunction and to expedite briefing and decision on the preliminary injunction. *Id.* at 94-156.

On October 10, the state court three-judge panel granted Plaintiffs' motion to expedite in part, ordering all Defendants to respond to the preliminary injunction motion by Monday, October 21 at 5 p.m., and setting a hearing for Thursday, October 24 at 10 a.m. ECF No. 5-1 at 653-59 (Order on Plaintiffs' Motion to Expedite; Notice of Hearing).

On October 14, just two business days after the state court expedited these proceedings and just months after they successfully convinced the U.S. Supreme Court in *Rucho* to close the federal courthouse doors to partisan gerrymandering claims, Legislative Defendants removed this case to federal court under the Refusal Clause of § 1443(2). As in their *Common Cause* removal, Legislative Defendants once again asserted that Plaintiffs' state constitutional partisan gerrymandering claims create a "colorable conflict" with the VRA and the Fourteenth Amendment, supposedly because affording the relief requested by Plaintiffs would intentionally dismantle a "minority crossover" district. *See* Notice ¶¶ 27, 37.

On October 15, one day after the case was removed, Plaintiffs filed an emergency motion to remand. Legislative Defendants filed their opposition brief on October 21, as the Court directed. The next day, on October 22, this Court remanded the case, concluding that "federal jurisdiction is doubtful for multiple reasons," including because Plaintiffs' claims are nonjusticiable in federal court under *Rucho*, the Refusal Clause does not apply, and any supposed "colorable conflict" between federal law and Plaintiffs' proposed remedy is speculative. *See Harper*, slip op. at 6-9. The Court "retain[ed] jurisdiction in the case" to consider Plaintiffs' motion for attorneys' fees and costs under 28 U.S.C. § 1447(c).

**ARGUMENT**

Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[2] In authorizing an award of fees and costs for improper removal, § 1447(c) aims to "deter removals intended to prolong litigation and impose costs on the opposing party." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005). Fees and costs are warranted under § 1447(c) when "the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

Legislative Defendants had no objectively reasonable basis in law or in fact to remove this case to federal court. First, the U.S. Supreme Court's decision in *Rucho* precludes federal subject matter jurisdiction over partisan gerrymandering claims. Second, as this Court held in *Common Cause*, Legislative Defendants cannot invoke the Refusal Clause of § 1443(2). Third, there is no possible "conflict" between state-law partisan gerrymandering claims and federal equal-rights law. Legislative Defendants' efforts to remove the case to federal court was nothing more than a transparent attempt to derail the expedited state-court proceedings, and the removal was taken in bad faith. Accordingly, this Court should award attorneys' fees and costs to Plaintiffs under § 1447(c).

Plaintiffs are also entitled to recover fees for time spent briefing this motion. *See Young v. Kenley*, 641 F.2d 192, 195 (4th Cir. 1981) (remanding for district court to award attorneys' fees, "including those expended to resolve the issue of attorneys' fees"); *Hymes v. Harnett Cty.*

---

[2] This Court retains jurisdiction to award such fees and costs even though the case has been remanded to state court. *See, e.g., Davis v. Pizza Hut of New Bern, Inc.*, No. 4:05-CV-167-FL(2), 2006 WL 8438587, at *3 (E.D.N.C. Apr. 6, 2006) (remanding and stating that "this court shall retain jurisdiction over this action only insofar as plaintiff may desire to pursue an award of costs and attorneys' fees pursuant to 28 U.S.C. 1447(c)"); *Nies v. Town of Emerald Isle*, No. 4:12-CV-10-F, 2013 WL 12159366, at *6 (E.D.N.C. Mar. 27, 2013) (remanding and directing plaintiff to file an affidavit listing costs and attorneys' fees, and allowing defendant to object to same); *Int'l Legware Grp., Inc. v. Americal Corp.*, No. 5:10-CV-153-D, 2010 WL 3603784, at *4 (E.D.N.C. Sept. 8, 2010) (similar).

*Bd. of Ed.*, 664 F.2d 410, 413 (4th Cir. 1981) (remanding so "an additional allowance may be considered" for fees incurred in defending entitlement to and arguing amount of attorneys' fees).

Finally, this Court may sanction Legislative Defendants under Federal Rule of Civil Procedure 11 and the Court's inherent authority. Sanctions are warranted here; Legislative Defendants' notice of removal was frivolous and made in bad faith and exemplifies the kind of undesirable behavior that sanctions are meant to deter.

## I. Plaintiffs Are Entitled to Attorneys' Fees and Costs Under 12 U.S.C. § 1447(c)

### A. There Was No Objectively Reasonable Basis for Removal

The Fourth Circuit has explained that an award of fees and costs is appropriate under § 1447(c) where a "cursory examination … would have revealed a lack of federal jurisdiction." *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). Here, the lack of federal jurisdiction was so obvious that Legislative Defendants' effort to remove the case can only be described as objectively unreasonable and frivolous.

#### 1. The Removal Was Objectively Unreasonable in Light of *Rucho*

Legislative Defendants did not need to do any research or examination to know that federal courts lacked jurisdiction over this case, since they were the prevailing parties in the very case that established the point. In *Rucho*, which concerned the same redistricting plan at issue here, the U.S. Supreme Court held—at Legislative Defendants' own urging—that federal courts lack subject matter jurisdiction over "claims of excessive partisanship in districting." 139 S. Ct. at 2491; *see, e.g.*, Br. of Appellants at 60, *Common Cause v. Rucho*, 139 S. Ct. 2484 (2019) ("[T]he grievance [of partisan gerrymandering] is a fundamentally political one that the framers delegated to the political branches and that Article III courts lack the power or competence to vindicate."); Reply Br. of Appellants at 6, *Common Cause v. Rucho*, 139 S. Ct. 2484 (2019) ("[T]he judicial department has no business entertaining partisan gerrymandering claims."). It

7

was therefore obvious that "*Rucho* forecloses jurisdiction of this court over the instant action," *Harper*, slip op. at 6, since Plaintiffs' "claims are based exclusively on a theory of 'partisan gerrymandering,'" and "'partisan gerrymandering claims present political questions beyond the reach of the federal courts.'" *Id.* (quoting *Rucho*, 139 S. Ct. at 1506-07) (alteration omitted).

Legislative Defendants did not even cite *Rucho* in their Notice of Removal, let alone try to explain how this Court could have jurisdiction in light of the U.S. Supreme Court's decision. In their response to Plaintiffs' motion to remand, Legislative Defendants argued that *Rucho* was inapposite "because the claims in that case were brought under the United States Constitution whereas the claims in the instant case [were] brought under the North Carolina Constitution." *Id.* But as this Court explained in remanding this case, that distinction "provides more reason, not less, to doubt jurisdiction in the instant matter." *Id.* *Rucho* stated that "state constitutions can provide standards and guidance <u>for state courts to apply</u>," not a "renewed basis for federal courts … to wade into an area that *Rucho*" forbade them from hearing "without qualification." *Id.* (quoting *Rucho*, 139 S. Ct. at 2507) (emphasis added by this Court). As this Court explained, "where there is no appropriate role for the Federal Judiciary, it is immaterial whether the partisan gerrymandering claims are couched in state or federal law." *Id.*

In light of *Rucho*, Legislative Defendants' removal was not just objectively unreasonable, but also abusive of the judicial machinery. *Rucho* was filed in 2016, and Legislative Defendants spent the next three years arguing to the federal courts that they lacked jurisdiction to hear partisan gerrymandering challenges, and specifically a challenge to the 2016 congressional plan. Legislative Defendants ultimately convinced the U.S. Supreme Court to adopt that position in a contentious 5-4 decision, causing three years of extensive litigation before a federal three-judge district court to have been for naught. For Legislative Defendants then to turnaround just months

after the U.S. Supreme Court's decision and argue that federal courts *do* have jurisdiction to hear a partisan gerrymandering challenge to the 2016 congressional plan was bad faith.

> ### 2. Legislative Defendants' Argument That Federal Jurisdiction Exists Under the "Refusal Clause" Was Objectively Unreasonable

Legislative Defendants' argument that the Refusal Clause of § 1443(2) provides an independent basis for jurisdiction is also objectively unreasonable—it "misses the mark for multiple reasons." *Harper*, slip op. at 7. To begin with, it is axiomatic that a statute like the Refusal Clause cannot "resurrect for federal court adjudication an otherwise non-justiciable claim, where non-justiciability is based upon … 'Article III of the Constitution,' which limits federal courts to deciding 'cases' and 'controversies.'" *Id.* (quoting *Rucho*, 139 S. Ct. at 2493).

Even if the Refusal Clause could "in theory" provide federal jurisdiction over nonjusticiable claims (which of course it cannot), the removal was still objectively unreasonable. Even before this case, "[t]his Court … has twice doubted the applicability of the 'refusal' clause to attempted removals by legislators in actions challenging legislative districting"—including an attempt by Legislative Defendants in the *Common Cause* case less than a year ago. *Harper*, slip op. at 8 (citing *Common Cause*, 358 F. Supp. at 510; *Stephenson v. Bartlett*, 180 F.2d 779 (E.D.N.C. 2001)). The same "shortcoming 'refusal' clause jurisdiction identified in the court's previous decision in *Common Cause* remain applicable here." *Id.* at 7.

For one thing, the Refusal Clause does not apply because Plaintiffs have not sued Legislative Defendants for "refusing to do any act." 28 U.S.C. § 1443(2). Numerous courts have held that the Refusal Clause does not authorize removal where the underlying suit challenges the removing defendants' action rather than inaction. *See* Pls.' Br. Supporting Mot. Remand at 12-13 (citing cases). And in *Common Cause*, this Court explained that a state court action challenging North Carolina's state legislative districts "is not brought against Legislative

Defendants 'for refusing to do' anything. Rather, plaintiffs challenge an action already completed, in the form of the 2017 Plans, as 'unconstitutional and invalid.'" *Common Cause*, 358 F. Supp. 3d at 510. This case is not meaningfully different, as Plaintiffs here seek to enjoin Legislative Defendants from administering the 2020 primary and general elections using an unconstitutional map that had already been enacted.

Beyond that, there is no possible conflict between Plaintiffs' state-law claims and federal equal rights law. Legislative Defendants asserted that following state law would require reducing the black voting age population ("BVAP") in District 1 below a level purportedly required by the VRA. But as this Court noted, *see Harper*, slip op. at 9, the U.S. Supreme Court held in *Cooper v. Harris*, 137 S. Ct. 1455 (2017), that Legislative Defendants lacked any evidence that the VRA imposes requirements for the racial composition of District 1. Nor could Legislative Defendants have reasonably believed that Plaintiffs' state-law claims conflict with the Fourteenth Amendment's Equal Protection Clause, which would require a showing that the state intentionally used race with the purpose of "*invidiously* minimizing or canceling out the voting potential of racial or ethnic minorities." *Abbott v. Perez*, 138 S. Ct. 2305, 2314 (2018) (emphasis added). It was not objectively reasonable to assert that the state court, in approving or adopting any remedial congressional plan, would act with invidious intent to crack African American voters in order to deliberatively dilute their voting power.

### 3. Blackletter Principles of State Sovereign Immunity Preclude Federal Jurisdiction Over State-Law Claim Seeking to Enjoin State Officials

Independent of the dispositive defects discussed above, removal here was also plainly foreclosed by *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). Under *Pennhurst*, the Eleventh Amendment's guarantee of state sovereign immunity prevents federal courts from granting injunctive relief against "state officials on the basis of state law," *id.* at 117,

which is precisely the relief sought by Plaintiffs. Legislative Defendants do not even dispute the point. Instead, they claim that their notice of removal serves to "waive the State's sovereign immunity for the purposes of this case." ECF No. 5 ¶ 23 (Notice of Removal). But while N.C. Gen. Stat. § 1-72.2 allows Legislative Defendants to "participate" in cases challenging the validity of North Carolina statutes, nothing in North Carolina law authorizes Legislative Defendants unilaterally to waive sovereign immunity on behalf of the State.

### B.    The Removal Was Pursued in Bad Faith

A party seeking fees and costs under § 1447(c) need not establish that the removal was taken in bad faith. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996); *Morgan Guar. Tr. Co. of N.Y. v. Republic of Palau*, 971 F.2d 917, 923 (2d Cir. 1992). But in considering a motion for fees and costs, "[a]n opponent's bad faith may strengthen the position of a party that obtained a remand." *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000).

Legislative Defendants acted in bad faith in removing this case, transparently seeking to delay and derail the state-court litigation by transferring jurisdiction to the federal courts on unquestionably unreasonable grounds. The removal was a blatant effort to upend the state court's expedited proceedings, including the preliminary injunction hearing, and to delay resolution of Plaintiffs' claims until it would be too late to provide relief for the 2020 elections. This is the paradigmatic case where § 1447(c) fees are warranted because the defendants improperly used removal "as a method for delaying litigation." *Martin*, 546 U.S. at 140.

The frivolous nature of Legislative Defendants' removal only underscores their bad faith motivations. As already described, Legislative Defendants had no plausible grounds for removing this case, a fact they surely knew based on the existing state of the law and their failed attempt to remove the *Common Cause* case on virtually identical grounds. Courts have awarded attorneys' fees under § 1447(c) where a defendant's grounds for removal had already been

rejected by federal courts in similar cases.  *See McPhatter v. Sweitzer*, 401 F. Supp. 2d 468, 479

(M.D.N.C. 2005); *In re Foreclosure Deed of Trust Dated Feb. 8, 1999*, No. 1:03-cv-00527, 2008

WL 5234301, at *3 (M.D.N.C. July 14, 2003).

### C.    Accounting of Fees and Costs

In this Circuit, attorneys' fees are calculated using the lodestar method, meaning the

"reasonable hourly rate multiplied by hours reasonably expended."  *Grissom v. The Mills Corp.*,

549 F.3d 313, 320-31 (4th Cir. 2008).  The "critical inquiry" is the hourly rate.  *Plyler v. Evatt*,

902 F.2d 273, 277 (4th Cir. 1990).  The fee applicant must provide "the attorney's own

affidavits" and "satisfactory specific evidence of the prevailing market rates in the relevant

community for the type of work for which he seeks an award."  *Id.* (internal quotation marks

omitted).  "The relevant market for determining the prevailing rate is ordinarily the community

in which the court where the action is prosecuted sits.  In circumstances where it is reasonable to

retain attorneys from other communities, however, the rates in those communities may also be

considered."  *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994).  This

includes "when the complexity and specialized nature of a case may mean that no attorney, with

the required skills, is available locally, and the party choosing the attorney from elsewhere acted

reasonably in making the choice." *Id.* (citation and internal quotation marks omitted).

The reasonableness of the attorneys' fee request is informed by the twelve

*Johnson/Barber* factors.  *See Grissom*, 549 F.3d at 320-31 (citing *Barber v. Kimbrell's, Inc.*, 577

F.2d 216, 226 (4th Cir. 1978), which adopted the reasonableness test set forth in *Johnson v.

Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other

grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *see also Cranberry Fin., LLC v. Ctr. of

Love Mission Church*, No. 5:10-cv-524-FL, 2011 WL 666261, at *1 (E.D.N.C. Feb. 14, 2011)

(applying *Johnson/Barber* factors in awarding attorneys' fees under § 1447(c)); *LaFountain v.*

*Paul Benton Motors of N.C., LLC*, 7:09-cv-212-F, 2010 WL 4457057, at *1 (E.D.N.C. Nov. 5, 2010) (same); *Dodeka, LLC v. AmrolDavis*, No. 7:10-cv-17-D, 2010 WL 3239117, at *1 (E.D.N.C. Aug. 16, 2010) (same).  The factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom*, 549 F.3d at 321 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18) (4th Cir. 1987)).  While courts consider all factors, a court "need not robotically list each factor," *Dodeka*, 2010 WL 3239117, at *2, and is "under no obligation to go through the inquiry of the factors that do not fit" the case, *In re A.H. Robins, Co., Inc.*, 86 F.3d 364, 376 (4th Cir. 1996).

Costs for research expenses that are routinely passed on to the client are also reimbursable under § 1447(c).  *See Dodeka*, 2010 WL 3239117, at *3; *see also League of Women Voters of Pa. v. Commonwealth of Pennsylvania*, 921 F.3d 378, 382, 384-85 (3d Cir. 2019) (upholding award of costs for travel and research expenses incurred in preparing a remand motion, preparing and attending an emergency hearing, and preparing the costs motion); *Adolph Coors Co. v. Truck Ins. Exchange*, 383 F. Supp. 2d 93, 97 (D.D.C. 2005) (awarding costs for printing, duplication, and Westlaw/Lexis charges incurred as a result of removal).

Attached to this motion are affidavits of R. Stanton Jones, Abha Khanna, and Burton Craige (Exhibits 1-3).  These affidavits describe the experience and qualifications of each attorney and state the local market rate for their work.  Detailed breakdowns of the tasks each attorney performed and the costs incurred in relation to the emergency motion to remand and this

13

motion are included in the exhibits attached to those affidavits.  The enclosed affidavit of Robert M. Elliot (Exhibit 4), a longstanding member of the North Carolina Bar practicing law in North Carolina, confirms that the hourly rates for each attorney are in line with rates accepted by courts in this District for attorneys with similar experience, working on similar matters.

For the reasons set forth below, an award of attorneys' fees in the amount of $34,465 and costs in the amount of $1,939.30 is reasonable.

### 1. The Attorneys' Fees Requested Are Reasonable Given the Time and Labor Involved, the Difficulty of the Questions Raised, and the Unique Time Limitations Imposed by the Circumstances

From the day this case was filed, everyone knew that Plaintiffs' ability to obtain relief depended on the expeditious resolution of the state-court proceedings.  Any delay in state court increases the likelihood that the state court will be forced to move the congressional primaries in order to implement a remedial map for the 2020 elections.  It was therefore critical that Plaintiffs immediately act on Legislative Defendants' notice of removal.  In order to avoid potentially derailing the state court's expedited schedule for these time-sensitive proceedings, Plaintiffs' counsel worked through the night to prepare a 30-page emergency motion to remand, and the motion was filed less than 24 hours after the case was removed.  It was efficient, reasonable, and absolutely necessary for several highly skilled attorneys to drop everything and spend 54 hours researching and drafting a motion demonstrating that none of Legislative Defendants' grounds for removal were reasonable, and related submissions including a notice of related case.

In fact, counsel's hours are lower than they would otherwise be for a remand motion of this complexity and length only because the grounds on which Legislative Defendants based their removal were substantially similar to the grounds on which they removed the *Common Cause* case in December 2018.  *Compare* ECF No. 25 (LD Response Opposing Plaintiffs'

Emergency Mot. for Remand) *with* Mem. in Opposition to Plaintiffs' Emergency Mot. to Remand, No. 5:18-cv-00589-FL (Dec. 28, 2018) (ECF No. 42).

It was likewise reasonable for Plaintiffs' counsel to spend 37.1 hours researching and drafting this motion for fees and costs.

> ### 2. The Emergency Motion to Remand Required Efforts by Skilled and Experienced Counsel Who Were Forced to Drop Other Matters to Respond to Legislative Defendants' Unreasonable Removal

Highly skilled and experienced attorneys were required to quickly draft and file the emergency motion to remand. And it was necessary and reasonable for Plaintiffs to seek the expertise of out-of-state counsel to litigate issues that are fundamental to the functioning of North Carolina's democratic government. *See Rum Creek*, 31 F.3d at 175.

As detailed in Mr. Jones' affidavit, Stanton Jones, Elisabeth Theodore, and Daniel Jacobson have a combined 26 years of litigation experience, including in civil rights, voting, and redistricting cases. Together, they have pioneered the approach of litigating partisan gerrymandering claims under state constitutions, and are the only lead trial counsel to have successfully done so in two cases (not including this one). In litigating those redistricting cases, Mr. Jones, Ms. Theodore, and Mr. Jacobson have drafted similar emergency motions to remand—including in the *Common Cause* case before this Court and in the Pennsylvania case, *see* Plaintiffs' Emergency Mot. to Remand, *League of Women Voters of Pa. v. Commonwealth of Pennsylvania*, No. 2:17-cv-05137 (Nov. 16, 2017) (ECF No. 2). Their Pennsylvania remand motion was praised by the district court as "excellent." *League of Women Voters*, 921 F.3d at 382. Senior Associate William Perdue and Associates Graham White and Sara Murphy D'Amico also have valuable litigation experience, as explained in Mr. Jones' affidavit. Mr. Perdue participated in litigating *Common Cause*, and Ms. D'Amico has been involved in all three cases, and drafted the § 1447(c) motion for fees and costs in the Pennsylvania case.

Attorneys Abha Khanna and Marc Elias similarly have extensive experience in voting rights and redistricting cases around the country. Mr. Elias is recognized as a national expert in political and elections law and has been involved in redistricting litigation in more than a half-dozen states since 2010. Ms. Khanna has challenged redistricting plans in six states. Both attorneys were also involved in litigating *Common Cause.*

Attorneys Burton Craige, Narendra K. Ghosh, and Paul E. Smith are likewise highly skilled attorneys with valuable experience. Mr. Craige focuses his practice on civil rights and constitutional law litigation, including voting rights cases. Mr. Craige has litigated complex cases in federal district court in North Carolina and has appeared before the Fourth Circuit Court of Appeals multiple times. Mr. Ghosh has been litigating civil rights, constitutional law, and appellate matters in North Carolina for over a decade and has argued numerous cases before the North Carolina Court of Appeals, the North Carolina Supreme Court, and the Fourth Circuit Court of Appeals. Mr. Smith also has experience litigating civil rights and constitutional law cases in North Carolina. He has argued several cases before the North Carolina Court of Appeals and the North Carolina Supreme Court. Mr. Smith and Mr. Craige recently served as co-counsel in a successful suit under Section Two of the Voting Rights Act, resulting in changes to how Jones County, North Carolina elects its county commissioners. *See Hall v. Jones County Board of Commissioners*, No. 4:17-cv-18-FL (E.D.N.C). And Mr. Ghosh and Mr. Smith were lead counsel in a successful suit challenging retroactive changes to North Carolina's ballot access laws. *See Edwards v. North Carolina*, 18-cvs-9749 (Wake Co. Sup. Ct).

The attorneys' fees requested are also reasonable given that Plaintiffs' attorneys were forced to turn their attention from other pressing matters to immediately respond to Legislative

Defendants' removal.  Because any delay could have cost Plaintiffs their ability to obtain relief in state court, Counsel had no choice but to prioritize the motion to remand.

### 3. The Results Obtained Support an Award of Attorneys' Fees in the Amount Requested

Under § 1447(c), fees and costs are available only when the district court grants remand. An award of fees for a successful remand motion compensates plaintiffs for the "additional costs" imposed by the removal and "reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005).  Here, Plaintiffs secured a remand a mere eight days after Legislative Defendants filed their Notice of Removal.  Remand was not a close call.  In particular, the Court held that "[f]ederal jurisdiction is doubtful, and remand is necessary, because this case is not justiciable in this court" and noted that Defendants' Refusal Clause argument "misses the mark for several reasons." *Harper*, slip op. at 5, 7.  In securing a remand to state court eight days after removal (thanks in large part to efficient consideration by this Court), Plaintiffs avoided delay and potential derailment of the state court case.

### 4. The Attorneys' Fees Requested Are Similar to the Customary Fee for Like Work and to Attorneys' Fee Awards in Similar Cases

The party requesting a fee award must establish the reasonableness of the requested rate by providing "satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." *Dodeka*, 2010 WL 3239117, at *2 (quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)).  The requested rates here are reasonable in light of the attorneys' experience, the complexity of the issues involved, the nature of the case, and the time constraints.  What's more, plaintiffs seek fees and costs at rates within the range of rates accepted by other Courts in this District and upheld by the Fourth Circuit for attorneys with similar experience.  For example, in *McAfee v. Boczar*, 738 F.3d 81 (4th Cir.

2013), the Fourth Circuit upheld the district court's findings that an hourly rate of $585 for lead counsel and $365 for the senior associate were reasonable for counsels' litigation of a 42 U.S.C. § 1983 claim. *Id.* at 93. And in *Doe v. Kidd*, 656 F. App'x 643 (4th Cir. 2016) (unpublished disposition), the Fourth Circuit directed the district court to use lead counsel's requested rate of $425 per hour and co-counsel's requested rate of $480 per hour for a complex civil litigation case, finding those rates to be reasonable and noting co-counsel's "national reputation." *Id.* at 654-55, 659-60. In *Veasey v. Wilkins*, 158 F. Supp. 3d 466 (E.D.N.C. 2016), the court found counsel's $500 hourly rate to be reasonable "within the realm of Second Amendment litigation and in the realm of litigation in the Raleigh, North Carolina, area." *Id.* at 472.

## II. Sanctions Are Warranted Under Rule 11 and this Court's Inherent Authority

The Court can and should impose sanctions on the Legislative Defendants in addition to awarding fees and costs under § 1447(c). The Fourth Circuit has held that "where an attorney's decision to remove is particularly blameworthy, courts have at their disposal Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and their inherent powers, all of which may permit awards of attorneys; fees against attorneys whose actions compromise standards of professional integrity and competence." *In re Crescent City Estates, LLC*, 588 F.3d 822, 831 (4th Cir. 2009). The Fourth Circuit has approved consideration of Rule 11 sanctions "when the removal petition was patently without merit, leading to the conclusion that removal was undertaken in bad faith." *Brown v. Brown*, 977 F.2d 571, 1992 WL 266856, at *1 (4th Cir. 1992). That is the case here.[3]

Rule 11 provides that an attorney's signature on a court filing constitutes a certification that, to the best of his or her knowledge, the filing makes legal contentions are either "warranted

---

[3] District courts retain jurisdiction to decide Rule 11 sanctions motions "even when [such motions] are filed after the underlying action is remanded to state court." *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1009 (4th Cir. 2014) (en banc).

by existing law" or non-frivolous extensions of the law, and that the filing is "not being presented for any improper purpose, such as to harass[ or] cause unnecessary delay." Fed. R. Civ. P. 11(b). If a court determines that Rule 11 has been violated, it may impose an appropriate sanction "on any attorney, law firm, or party that violated the rule or is responsible for its violation" and may award to the moving party "the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1) & (2).[4]

A legal argument violates Rule 11 when an objectively reasonable attorney would recognize it as having "absolutely no chance of success under the existing precedent." *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (internal quotation marks omitted); *see Curran v. Price*, 150 F.R.D. 85, 86 (D. Md. 1993) (imposing Rule 11 sanctions where defendant removed on basis of federal defense). When determining whether a filing was brought for an improper purpose, courts judge counsel's conduct under an objective standard of reasonableness, looking at factors such as whether counsel has made outrageous claims, the signer's experience in that particular area of law under which the baseless claims were made, or whether counsel made repeated filings. *In re Kunstler*, 914 F.2d 505, 518-19 (4th Cir. 1990). Separate and apart from Rule 11, federal courts have inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991); *Chosin Few, Inc. v. Scott*, 209 F. Supp. 2d 593, 606 (W.D.N.C. 2002) (awarding attorneys' fees pursuant to 28 U.S.C. § 1927 and the court's inherent authority).

---

[4] Plaintiffs have complied with Fed. R. Civ. P. 11(c)(2), which requires the movant to effect service under Rule 5, but refrain from filing "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriate corrected within 21 days after service or within another time the court sets." Plaintiffs served a Rule 11 motion on Mr. Strach, Mr. McKnight, and the Ogletree Deakins law firm more than 21 days ago, on October 18, 2019, and Legislative Defendants' Notice of Removal was not withdrawn.

Sanctions are warranted here given Legislative Defendants' objectively frivolous and bad faith removal. Legislative Defendants' counsel who signed the Notice of Removal were also counsel for Legislative Defendants in *Rucho*, including before the U.S. Supreme Court. *Rucho*, 139 S. Ct. at 2506-08. Counsel thus undoubtedly knew that their own Supreme Court victory meant there could be no federal jurisdiction over this case. Further, Legislative Defendants' counsel knew that this Court had rejected their removal of *Common Cause* on the same grounds. There are no new facts in this case or intervening change in the law that would have led an objectively reasonable attorney (especially one with Legislative Defendants' counsels' experience) to believe that jurisdiction was suddenly proper in this Court. *Rucho* independently precludes any such notion. Legislative Defendants therefore must have known at the outset that any attempt to remove this case was doomed. The facts reveal Legislative Defendants' intent: they did not remove this case because they believed that doing so was legally or factually justifiable, but rather as a tactic to delay or derail the expedited proceedings in state court.

This is exactly the kind of gamesmanship that Rule 11 seeks to deter. Courts in this Circuit impose Rule 11 sanctions where attorneys misuse the removal statutes to delay or obstruct state court proceedings. *See, e.g.*, *Sanders v. Farina*, 197 F. Supp. 3d 892, 900-03 (E.D. Va. 2016), *aff'd*, 2016 WL 7338495 (4th Cir. Dec. 19, 2016); *Wilson v. Ethicon Women's Health & Urology*, 2014 WL 1900852, at *5 (S.D. W. Va. May 13, 2014); *Curran v. Price*, 150 F.R.D. 85, 87 (D. Md. 1993); *see also In re Crescent City Estates, LLC*, 588 F.3d at 831. And imposing Rule 11 sanctions is particularly warranted here to ensure that taxpayers do not shoulder the burden of paying Plaintiffs' fees and expenses. Private counsel retained by Legislative Defendants should not be incentivized to take frivolous litigation action out of comfort that neither they nor their clients will personally suffer any consequences.

**CONCLUSION**

For the foregoing reasons, the Court should award fees and costs to Plaintiffs in the amount of $36,404.30.

DATED:  November 27, 2019

Respectfully submitted,

/s/ Burton Craige
Burton Craige, NC Bar No. 9180
Narendra K. Ghosh, NC Bar No. 37649
Paul E. Smith, NC Bar No. 45014
PATTERSON HARKAVY LLP
100 Europa Dr., Suite 420
Chapel Hill, NC  27517
(919) 942-5200
bcraige@pathlaw.com
nghosh@pathlaw.com
psmith@pathlaw.com

*Counsel for Plaintiffs*

/s/ R. Stanton Jones
R. Stanton Jones
Elisabeth S. Theodore
Daniel F. Jacobson
William C. Perdue
Sara Murphy D'Amico
Graham White
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
(202) 954-5000
stanton.jones@arnoldporter.com

/s/ Marc E. Elias
Marc E. Elias
Aria C. Branch
PERKINS COIE LLP
700 13th Street NW
Washington, DC 20005-3960
(202) 654-6200
melias@perkinscoie.com

Abha Khanna
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
(206) 359-8000
akhanna@perkinscoie.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, November 27, 2019, I caused Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Fees and Costs to be filed and served on all counsel of record by operation of the CM/ECF system for the United States District Court for the Eastern District of North Carolina.

DATED:  November 27, 2019

<u> /s/   R. Stanton Jones           </u>
R. Stanton Jones